# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAWAN TARQUINII,
Appellant,

v.

JOHN PHELAN,
SECRETARY OF THE NAVY,
Appellee.

On Appeal from the United States
District Court for the District of Columbia

## BRIEF FOR APPELLEE

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

ANNA D. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2543

Civ. A. No. 21-1567          *Attorneys for the United States of America*

# CERTIFICATE AS TO
## PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

**Parties and Amici.** The plaintiff-appellant is Jawan Tarquinii. The defendant-appellee is John Phelan, Secretary of the Navy. Ben Harris is Court-Appointed amicus curiae in support of Appellant. There were no other parties, intervenors, or amici.

**Ruling Under Review.** At issue in this appeal is the September 26, 2024, memorandum opinion and order by Judge Rudolph Contreras granting the defendant's motion for summary judgment. The opinion is available in the joint appendix (JA1987) and on Westlaw, *Tarquinii v. Del Toro*, Civ. A. No. 21-1567 (RC), 2024 WL 4298857 (D.D.C. Sept. 26, 2024).

**Related Cases.** This case has not previously been before this Court. Undersigned counsel is unaware of any pending related cases.

# TABLE OF CONTENTS

**Heading**                                                                          **Page**

Certificate as to Parties, Rulings, and Related Cases ............................ i

Table of Contents ............................................................................... ii

Table of Authorities ........................................................................... iv

Glossary ............................................................................................. vii

Introduction ........................................................................................ 1

Jurisdictional Statement ..................................................................... 2

Statutes and Regulations .................................................................... 3

Statement of Issues ............................................................................ 3

Counterstatement of the Case ............................................................ 3

I.      Reasonable Accommodation ...................................................... 4

II.     Tarquinii's Pattern of Abusing Her Position ............................. 5

III.    Inspector General Investigation ................................................. 6

IV.    Termination ................................................................................. 7

V.     Appeal Process ............................................................................ 8

VI.    Equal Employment Opportunity Complaints ............................. 9

VII.   District Court Proceedings ......................................................... 11

VIII. This Appeal ................................................................................ 12

Summary of the Argument .................................................................. 12

Standard of Review ............................................................................. 13

Argument.....................................................................................14

I.    The District Court Correctly Granted Summary Judgment on
      Tarquinii's Discrimination and Retaliation Claims.....................14

      A.    The *McDonnell-Douglas* Framework Applies to Tarquinii's
            Discrimination and Retaliation Claims...............................14

      B.    The Agency Has a Legitimate Nondiscriminatory and
            Nonretaliatory Reason for Terminating Tarquinii's
            Employment and Upholding Termination on Appeal. .........17

      C.    A Reasonable Jury Could Not Find that the Agency's
            Justifications Were Pretext and that the Agency
            Intentionally Discriminated or Retaliated Against Tarquinii.
            ...........................................................................................21

            1.    Other Performance Reviews ........................................24

            2.    Shifting Justifications.................................................28

            3.    Procedural Anomalies .................................................32

            4.    Comparators.................................................................38

            5.    Evidence of Retaliation ...............................................41

            6.    Evidence of Discrimination..........................................47

      D.    There Is No Evidence in the Record on Which a Reasonable
            Jury Could Find that the Agency Unlawfully Interfered with
            Other Employment Opportunities.......................................53

II.   Amicus Curiae's Arguments Are Unavailing ...............................54

Conclusion ...............................................................................................58

Certificate of Compliance ......................................................................60

Certificate of Service .............................................................................60

# TABLE OF AUTHORITIES

**Cases** .................................................................................. Page(s)

*Allen v. Johnson,*
   795 F.3d 34 (D.C. Cir. 2015) ............................................ 13, 20, 21, 35

*Al-Tamimi v. Adelson,*
   916 F.3d 1 (D.C. Cir. 2019) .................................................................. 42

*Baloch v. Kempthorne,*
   550 F.3d 1191 (D.C. Cir. 2008) ........................................................... 14

*Bart v. Golub Corp.,*
   96 F.4th 566 (2d Cir. 2024) ........................................................... 51, 53

*Brady v. Off. of Sergeant at Arms,*
   520 F.3d 490 (D.C. Cir. 2008) ............................... 15-16, 25, 27, 39, 45

*Breiterman v. United States Capitol Police,*
   15 F.4th 1166 (D.C. Cir. 2021) ............................................... 32, 33, 36

*Burley v. Nat'l Passenger Rail Corp.,*
   801 F.3d 290 (D.C. Cir. 2015) ............................................................ 38

*Fischbach v. D.C. Dep't of Corr.,*
   86 F.3d 1180 (D.C. Cir. 1996) ............................................................ 23

*Fogg v. Gonzales,*
   492 F.3d 447 (D.C. Cir. 2007) ....................................................... 54, 55

*Geleta v. Gray,*
   645 F.3d 408 (D.C. Cir. 2011) ......................................... 27, 28, 30, 32

*Ginger v. District of Columbia,*
   527 F.3d 1340 (D.C. Cir. 2008) .................................................... 54, 55

*Gov't of Manitoba v. Bernhardt,*
   923 F.3d 173 (D.C. Cir. 2019) ............................................................ 42

*Grimes v. District of Columbia,*
   794 F.3d 83 (D.C. Cir. 2015) .............................................................. 49

*Hawkins v. PepsiCo, Inc.,*
   203 F.3d 274 (4th Cir. 2000) ........................................................ 18, 19

*Holcomb v. Powell,*
   433 F.3d 889 (D.C. Cir. 2006) ............................................................ 43

*Iyoha v. Architect of Capitol,*
   927 F.3d 561 (D.C. Cir. 2019) ............................................................ 48

*Jackson v. Gonzales,*
496 F.3d 703 (D.C. Cir. 2007) ........................................................22

*Jones v. Bernanke,*
557 F.3d 670 (D.C. Cir. 2009) ........................................................44

*Joyner v. Morrison & Foerster LLP,*
140 F.4th 523 (D.C. Cir. 2025) .......................................................38

*Keepseagle v. Perdue,*
856 F.3d 1039 (D.C. Cir. 2017) .................................................17, 55

*Mayorga v. Merdon,*
928 F.3d 84 (D.C. Cir. 2019) ..........................................................14

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) .......................................................... 13, 14, 15

*MetLife, Inc. v. Fin. Stability Oversight Council,*
865 F.3d 661 (D.C. Cir. 2017) .................................................55, 56

*Morris v. McCathry,*
825 F.3d 658 (D.C. Cir. 2016) .............................................48, 49, 50

*Neuren v. Adduci, Mastriani, Meeks & Schill,*
43 F.3d 1507 (D.C. Cir. 1995) ........................................................39

*Parker v. HUD,*
891 F.2d 316 (D.C. Cir. 1989) ........................................................24

*Ponce v. Billington,*
679 F.3d 840 (D.C. Cir. 2012) ........................................................54

*Price Waterhouse v. Hopkins,*
490 U.S. 228 (1989) ........................................................................56

*Rachid v. Jack In The Box, Inc.,*
376 F.3d 305 (5th Cir. 2004) ..........................................................51

*Rachon v. Gonzales,*
438 F. 3d 1211 (D.C. Cir. 2006) .....................................................15

*Ramos v. Garland,*
77 F.4th 932 (D.C. Cir. 2023) .........................................................13

*Schneider v. Kissinger,*
412 F.3d 190 (D.C. Cir. 2005) ........................................................42

*Solomon v. Vilsack,*
763 F.3d 1 (D.C. Cir. 2014) ......................................................13, 27

*Tarquinii v. Del Toro,*
Civ. A. No. 21-1567 (RC), 2024 WL 4298857 (D.D.C. Sept. 26, 2024)...i

*Univ. of Tex. Sw. Med. Ctr. V. Nassar,*
570 U.S. 338 (2013) ........................................................................44

*Vatel v. Alliance of Auto. Mfrs.*,
    627 F.3d 1245 (D.C. Cir. 2011) ...................................................... 18, 26
*Walker v. Johnson*,
    798 F.3d 1085 (D.C. Cir. 2015) ...................................................... 21, 34
*Waterhouse v. District of Columbia,*
    298 F.3d 989 (D.C. Cir. 2002) ...................................................... 16, 19

Statutes

28 U.S.C. § 1291 ................................................................................3
28 U.S.C. § 1331 ................................................................................2
29 U.S.C. § 791 ...............................................................................13
29 U.S.C. § 794a(a)(1)....................................................................2, 13
42 U.S.C. § 2000e ................................................................. 11, 12, 13
42 U.S.C. § 2000e-5(f)(3) .................................................................2

Rules

Fed. R. App. P. 32(a)(7)(B) .........................................................59
Fed. R. Civ. P. 56(a)......................................................................13

# GLOSSARY

Agency .................................................United States Marine Corps & Marine Corps Community Services

Community Services .........................Marine Corps Community Services

JA.......................................................Joint Appendix

Iwakuni Air Station .........................Marine Corps Air Station in Iwakuni, Japan

Marine Corps....................................United States Marine Corps

# INTRODUCTION

This case turns on whether Appellant Jawan Tarquinii proffered sufficient evidence from which a reasonable jury could find that her former employer, the United States Marine Corps ("Marine Corps" or "Agency"), discriminated or retaliated against her when she was terminated from her civilian position with the Agency. The record confirms not. Instead, the undisputed record shows that Tarquinii's supervisors terminated Tarquinii from her position as chief of a human resources office after an independent Inspector General Investigation sustained complaints against Tarquinii for committing the egregious misconduct of nepotism. Tarquinii's attempts on appeal to manufacture a record that discredits the Investigation and paints the Agency's decision to terminate Tarquinii as pretext are unsupported at best. Nor is there evidence on which a jury could reasonably find that the Agency acted on any discriminatory or retaliatory motive.

Amicus argues that there is sufficient evidence on which a reasonable jury could find that a mixed motive existed to terminate Tarquinii not only for a legitimate nondiscriminatory and nonretaliatory basis, but also because of her race or sex. But setting aside the fact that

amicus cannot expand on appeal theories of liability that Tarquinii never raised before the District Court and which caselaw shows that the District Court had no reason to consider without notice, any mixed-motive argument in this case fundamentally fails. There is no evidence in the undisputed record that shows that any bias inferred from Tarquinii's testimony, only, about her supervisor's inappropriate comments as to her weight, religion, or race, or sexist comments as to her demeanor, played any role in her termination.

Thus, because the undisputed record shows the Agency terminated Tarquinii for legitimate nondiscriminatory reasons and because there is no evidence on which a reasonable jury could find that this justification was pretext and that the Agency discriminated or retaliated against Tarquinii instead, the District Court's summary judgment ruling should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3); *see also* 29 U.S.C. § 794a(a)(1). Tarquinii timely appealed from the final order granting summary judgment to the

Department. Notice of Appeal (R.75), JA2041. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in an addendum submitted herewith.

## STATEMENT OF ISSUES

In the opinion of the United States, the question presented is:

1. Is there any genuine issue of material fact as to whether Tarquinii's employer, the United States Marine Corps, discriminated and retaliated against her when she was issued a proposed notice of termination on November 10, 2015; was terminated on November 23, 2015; was denied her appeals of termination on March 21, 2016 and June 22, 2016; and was not selected for five positions post-termination.

## COUNTERSTATEMENT OF THE CASE

Tarquinii is an African American female who identifies as Catholic and a former civilian employee for the Marine Corps Community Services ("Community Services" or "Agency") located at the Marine Corps Air Station in Iwakuni, Japan ("Iwakuni Air Station"). *See* Def.'s Reply Stmt. (R.71-2) ¶¶ 1-3, JA1896-97. Tarquinii joined Community Services in July 2013 and worked first as Deputy, then as Chief, of Human

Resources before she was terminated from her employment on November 23, 2015. *See id.* ¶¶ 2-5, 41, JA1896-97, 1914. Tarquinii's first-line supervisor was Robert Johnston, and her second-line supervisor was John Iwaniec. *See id.* ¶ 6, JA1897-98.

## I. <u>Reasonable Accommodation</u>

Although there is no longer any reasonable accommodation claim at issue on appeal, Tarquinii has previously alleged that she was denied reasonable accommodations. *See* Compl. (R.1) at 1, JA11; Mar. 6, 2025, Order. On July 27, 2015, Tarquinii submitted a request from her doctor that she be allowed to have telework and a reduced workload for two months. *See* Def.'s Stmt. (R.60-2) ¶ 37, JA71; Pl.'s Ex. 14 (65-16) at 17, JA997. Tarquinii's second-line supervisor, Iwaniec, approved this request. Def.'s Stmt. (R.60-2) ¶ 36, JA1912; Pl.'s Ex. 14 (65-16) at 17, JA997. Tarquinii claims that she has certain medical conditions, which she considers disabling, including hypertension, migraines, and anxiety disorders. *See* Tarquinii Decl. (60-6) at 4, JA286. On October 16, 2015, Tarquinii's doctor further recommended that Tarquinii's accommodations be extended from two months to a full year. *See* Extension Request (60-18) at 3, JA363. Before Tarquinii could submit

her paperwork to support this request, however, the Agency issued Tarquinii her proposed termination letter on November 10, 2015, and Tarquinii was eventually terminated on November 23, 2015, as detailed as follows. *See* Def.'s Reply Stmt. (R.71-2). ¶ 41, JA1914; *See* Notification of Proposal to Terminate Letter ("Proposal Letter") (R.60-4) at 30-31, JA127-128; Notification of Termination of Employment ("Termination Letter") (R.60-4) at 39-40, JA136-137.

## II.    Tarquinii's Pattern of Abusing Her Position

Prior to her termination, Tarquinii's employment in Community Services was not without issue. In 2014, Tarquinii was informally counseled for misusing confidential personnel information to benefit herself. *See* Def.'s Stmt. (R.60-2) ¶ 21, JA68; July 11, 2014, Email (R.60-15), JA352. Then, on September 28, 2015, Johnston issued Tarquinii a negative mid-year performance evaluation with an accompanying Letter of Caution. *See* Sept. 28, 2015, Ltr. of Caution (R.63-2) at 138-144, JA2209-2215. The Letter of Caution identified several areas of concern, including that Tarquinii, as Chief of Human Resources, had recommended serious discipline against an employee that her work product could not support. *See id.* at 138-139, JA2209-10. Tarquinii

grieved this mid-year evaluation to her second-line supervisor, Iwaniec, who, on October 14, 2015, adjusted Tarquinii's overall score upward to "Meets Expectations," while reserving some concerns as to Tarquinii's work performance. *See* Oct. 14, 2015, Iwaniec Ltr., (R.60-4) at 132, 136, JA229, 233.

### III. <u>Inspector General Investigation</u>

Meanwhile, between May and June 2015, allegations from outside of Tarquinii's chain of command accused Tarquinii of nepotism by improperly influencing Community Services to hire her husband and brother. *See* Select Portions of Hotline Completion Report (R.63-8) at 5-15, 18-19, 22–23, JA2290-2300, 2303-2304, 2307-2308; Mem. Op. (R.74) at 19, JA2005. The allegations of misconduct against Tarquinii were referred to Inspector General Investigator Carl D. Hodges for investigation. *See* Select Portions of Hotline Completion Report, (R.63-8) at 23, JA2308. Carlos Saldana, who worked as the Human Resources Chief at a different Marine Corps Base, Base Camp Butler, in Okinawa, Japan, was detailed to assist Hodges. *See* Def.'s Reply Stmt. (R.71-2) ¶¶ 11, 48, JA1899, 1917-18; *See* Portions of Report of Investigation, DON(MC)-16-67400-04198 ("ROI") (R.60-4) at 150, JA247.

On October 15, 2015, Investigator Hodges submitted the final report for the Office of the Inspector General, which was supported by extensive evidence, including thirty-six enclosures, among which were statements from thirteen employees. *See* ROI (R.60-4) at 151-152, JA248-249. The report substantiated several allegations of misconduct against Tarquinii, including that Tarquinii had improperly used her position to advocate for hiring her husband and brother in violation of Community Services personnel policies and federal law. *See id.* at 155-167, JA2226-2227.

## IV.     **Termination**

Tarquinii's first and second-line supervisors, Johnston and Iwaniec reviewed the Inspector General report. *See* Def.'s Reply. Stmt. (R.71-2) ¶¶ 83, 95, JA1939, 1945. Johnson then issued a proposal to terminate Tarquinii on November 10, 2015, and Iwaniec issued Tarquinii a notification of termination on November 23, 2015. *See* Proposal Letter (R.60-4) at 30-31, JA127-128; Termination Letter (R.60-4) at 39-40, JA136-137. Both the proposal to terminate and  termination letter explained that Tarquinii's misconduct, as found in the Inspector General Report, was the reason for her termination. *See id.*

Prior to termination, Tarquinii was afforded the opportunity to review the full Investigation Report and did read the Investigation Report. *See* Tarquinii's Ex. 22, Facebook messages between J.N. Tarquinii and D. Ray (R.65-25), JA1360-1361 ("I've read the report."); Tarquinii Dep. (R.60-5) at 150:4-10, JA275; *see* Appeal of Proposal Letter ("Appeal Ltr.") (R.63-2) at 32-38, JA127-128; Nov. 2015 Emails between N. Tarquinii and R. Johnston, (R.63-5) at 2-3, JA2264-65; Tarquinii was also offered a resignation package in lieu of termination, which she rejected and instead submitted her letter appealing her proposed termination. *See* Appeal Ltr. (R.60-4) at 32-38, JA129-135; Termination Letter (R.60-4) at 39, JA136 (noting date for Appeal Ltr.).

## V.   **Appeal Process**

Tarquinii then filed an appeal of her termination with the Commanding Officer at Marine Corps Air Station Iwakuni, Colonel Boucher. *See* Written Appeal of Termination (R.60-4) at 42, JA139. Colonel Boucher appointed a hearing officer to help coordinate the appeal process and scheduled an appeal hearing. *See* Mar. 21, 2016, 1st Appeal Decision (R.60-11) at 2-3, JA326-327. Tarquinii then waived her right to an appeal hearing and requested a decision on the written submissions

by the parties to the appeal. *See id.* On March 21, 2016, Colonel Boucher upheld the decision to terminate Tarquinii's employment after finding that there was "substantial evidence to support the conclusion that [Tarquinii] violated rules prohibiting nepotism and actual or apparent conflicts of interest on multiple occasions by the actions [she] took in connection with the employment of [her] husband and [her] brother." *Id.*

Tarquinii then filed a second-level appeal with Marine Corps Headquarters. *See* Final Appeal Decision, (R. 60-12) at 3-4, JA330-331. On June 21, 2016, the final appeal authority—Cindy Whitman Lacy, the Director of the Business and Support Services Divisions at Marine Corps Headquarters—issued a final decision upholding the decision to terminate Tarquinii's employment with Community Services. *See id.*

## VI. <u>Equal Employment Opportunity Complaints</u>

After her termination, and while her appeal was pending, Tarquinii initiated Equal Employment Opportunity ("EEO") Counseling. *See* ROI (R.60-4) 74, JA171. In On April 8, 2016, Tarquinii submitted her first formal EEO Complaint alleging that the Agency had discriminated against her based on her race, gender, religion, disability, and as reprisal for prior protected activity when it terminated her employment and when

it upheld her termination.  *See* 1st EEO Compl. (R.60-4) at 6-29, JA103-126.  Tarquinii's formal EEO complaint further alleged that the Agency had retaliated against her based on her prior EEO activity by interfering with her selection for employment with the U.S. Department of Justice, U.S. Navy, and U.S. Government Publishing Office.  *See id.*  Tarquinii amended her EEO complaint three more times on May 13, 2016, July 21, 2016, and April 24, 2019, to add two more retaliation claims against the Agency for purportedly interfering in two more non-selections after her termination—at the U.S. Bureau of Engraving and Printing and U.S. Department of Commerce, and to add a further claim of discrimination and retaliation after her second-level appeal of her termination was denied.  *See* 1st Am. EEO Compl. (R.60-30) at 3, JA2337;  *See* 2d Am. EEO Compl. (R.60-31) at 4, JA2368; Def.'s Reply Stmt. (R.71-2) ¶¶ 179, 181-183, JA1981-82.

On November 20, 2019, while briefing summary judgment at the EEOC, Tarquinii sought to add, for the first time, a denial of reasonable accommodations claim and hostile work environment claim.  *See* Jan. 14, 2021, Order (R.60-37) at 6-8, JA2401-2403. The Administrative Judge denied the request to amend and then granted summary judgment in

favor of the Agency on all other claims. *See id.* 5-21, JA2400-2416. The Agency adopted that decision. *See* Feb. 22, 2021, Final Agency Decision (R.60-38) at 2, JA548.

## VII. <u>District Court Proceedings</u>

Having lost her case at the agency-level, Tarquinii filed suit in federal court. Tarquinii's underlying complaint alleges that she was discriminated against based on race, sex, religion, and disability and retaliated against based on prior EEO activity under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Rehabilitation Act of 1973 when the Agency terminated Tarquinii and when it upheld her termination on appeal, and when the Agency, allegedly interfered in Tarquinii's post-termination job applications to other agencies. *See generally* Compl. (R.1) at 1, 3-16, JA11, 13-26. Tarquinii also alleged claims for hostile work environment and denial of reasonable accommodations. *See id.* After discovery, the Agency filed a motion for summary judgment. *See generally* Def.'s Mot. for Summ. J. (R.60), JA62. Tarquinii filed a brief in opposition, *see generally* Pl.'s Opp'n (R.65), JA563, and the Agency filed a reply in support of its motion for summary judgment, *see generally* Def.'s Reply (R.71). The District

Court then granted the Agency's summary judgment motion in full. *See* Order (R.73), JA1986; Mem. & Op. (R.74), JA1987.

## VIII. <u>This Appeal</u>

After the District Court entered summary judgment in favor of the Agency, Tarquinii appealed. *See* Notice of Appeal (R.75), JA2041. The parties exchanged motions for summary reversal and for summary affirmance. On March 6, 2025, this Court denied Tarquinii's' motion for summary reversal and granted Appellee's motion for summary affirmance in part. *See* Mar. 6, 2025 Order. This Court affirmed the District Court's findings that Tarquinii had failed to exhaust her claims of hostile work environment, denial of reasonable accommodation, and discrimination and retaliation claims related to Tarquinii's negative performance evaluation, because Tarquinii failed to address them in the parties' cross-motions for dispositive relief. *Id.* This Court then denied summary affirmance as to Tarquinii's retaliation and discrimination claims, which remain the sole issues on appeal. *Id.*

## SUMMARY OF THE ARGUMENT

The Court should affirm summary judgment entered by the District Court in this employment discrimination and retaliation case. First the

District Court properly reviewed the evidence in the record, and found that the Agency had a legitimate nondiscriminatory reason to terminate Tarquinii's employment, deny Tarquinii's appeals of that termination, and respond for reference requests after Tarquinii was found, by an independent investigator, to have committed nepotism when she advocated for and failed to recuse herself from her brother and husband's hiring. The District Court, also properly reviewed all the evidence in the record, and construing it in the light most favorable to Tarquinii, found, nonetheless that no reasonable jury could find that the evidence shows that the Agency's justifications were pretext and that the Agency acted with discriminatory or retaliatory intent, regardless of whether the case is analyzed under a single theory or multi-factor theory of liability. That said, Tarquinii never raised and therefore waived, for purposes of overcoming summary judgment, any motivating factor theory of liability.

## STANDARD OF REVIEW

The Court reviews the grant of summary judgment de novo, construing the facts "in the light most favorable" to the nonmovant and giving her "the benefit of all reasonable inferences." *Ramos v. Garland*, 77 F.4th 932, 934 (D.C. Cir. 2023). Summary judgment "shall" be granted

if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## ARGUMENT

### I. The District Court Correctly Granted Summary Judgment on Tarquinii's Discrimination and Retaliation Claims.

#### A. The *McDonnell-Douglas* Framework Applies to Tarquinii's Discrimination and Retaliation Claims.

Tarquinii's discrimination and retaliation claims arise under Title VII of the Civil Rights Act and the Rehabilitation Act. 42 U.S.C. § 2000e, *et seq.*; 29 U.S.C. § 791. The framework for assessing all of Tarquinii's claims is the same.[1] Because it is undisputed that no direct evidence of discrimination or retaliation exists, the District Court correctly applied the burden-shifting framework established under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-808 (1973). *See Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015); *Solomon v. Vilsack*, 763 F.3d 1, 14-16 (D.C. Cir. 2014); *see* Amicus Br. at 26-27 (acknowledging that "this Court" "more recently" stated that "'if the record does not contain direct evidence

---

[1] The Rehabilitation Act applies the substantive discrimination standards of the Americans with Disabilities Act to executive agencies, *see* 29 U.S.C. §§ 791(f), 794(d), and it makes Title VII rights, remedies, and procedures available to federal agency "employee[s] or applicant[s] for employment," *id*. § 794a(a)(1).

that the employment action was caused by prohibited discrimination then we turn to the burden-shifting framework of *McDonnell Douglas*" to assess liability, regardless of whatever liability is argued under a but-for or multi-factor theory) (citing *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019)); Appellant Br. at 62 (discussing how the District Court failed to assess liability under standards set within the *McDonnell-Douglas* framework).

Under step one of the *McDonnell-Douglas* framework, an employee carries the initial burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802. Two elements establish prima facie discrimination: (1) the plaintiff suffered an adverse employment action (2) because of the plaintiff's race, color, religion, sex, national origin, age, or disability. *See Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008); *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Similarly, to establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered materially adverse employment action, and (3) a causal connection exists between the protected activity and the challenged

retaliatory act. *See Rachon v. Gonzales*, 438 F. 3d 1211, 1219-20 (D.C. Cir. 2006). Once an employee meets her burden of establishing a prima facie case, the burden shifts to the employer to demonstrate a "legitimate, nondiscriminatory reason" for an adverse action. *McDonnell Douglas*, 411 U.S. at 802 (cleaned up).

As in this case, however, when the employer presents a legitimate, nondiscriminatory and nonretaliatory reason for an adverse action, the District Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady*, 520 F.3d at 494 (emphasis in original). Instead, "the burden-shifting framework falls away," *Allen*, 795 F.3d at 302, and the District Court "must resolve one central question," namely, whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's [proffered] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee" because of a protected characteristic or prior protected activity. *Brady*, 520 F.3d at 494. To do this, the Court will review a plaintiff's prima facie case, evidence of pretext, and any other category of evidence to determine whether "either separately or in combination" the evidence is "sufficient to permit [a plaintiff's] case to go

to a jury." *Waterhouse v. District of Columbia,* 298 F.3d 989, 996 (D.C. Cir. 2002).

### B. The Agency Has a Legitimate Nondiscriminatory and Nonretaliatory Reason for Terminating Tarquinii's Employment and Upholding Termination on Appeal.

First, in its motion for summary judgment, the Agency presented a legitimate non-discriminatory and non-retaliatory reason for Tarquinii's termination. *See* Mem. Op. (R.74) at 18, JA2004. An Inspector General's Investigation found that Tarquinii had improperly advocated for and participated in her husband and brother's hiring actions in violation of personnel policy and federal regulations, and it is undisputed that Tarquinii's supervisors based their determinations to terminate Tarquinii upon these investigation findings. *See* Def.'s Reply Stmt. (R.71-2) ¶¶ 65-67, 68-71, 73, 82, 84, 96, JA1929-1934, 1938-1939, 1945; ROI (R.60-4) at 150-167, JA247-264; Proposal Letter (R.60-4) at 30-31, JA127-128; Termination Letter (R.60-4) at 39-40, JA136-137; Johnston Decl. (R.60-7) at 5, JA292; *see* Def.'s Resp. Stmt. (R.71-1) ¶ 130, JA1874.

The District Court thoroughly examined the record and concluded that nothing therein can support a showing that that investigation was undertaken for discriminatory or retaliatory animus. *See* Mem. Op.

(R.74) at 19, JA2005.  Instead, the record shows that the investigation was initiated because of complaints made by individuals outside Tarquinii's chain of command, was led by Inspector Hodges, whom Tarquinii does not allege acted in any discriminatory or retaliatory manor toward Tarquinii, and that the investigation was thorough.  *See* Select Portions of Hotline Completion Report (R.63-8) at 5-15, 18-19, 22-23, JA2290-2300, 2303-2304, 2307-2308; ROI (R.60-4) at 150, 167, JA247, 264.

On appeal, Tarquinii now argues that the investigation was biased because Saldana, a coworker with whom Tarquinii did not get along, served as lead investigator and authored the report, and had a conflict of interest in that role because he was named in Tarquinii's EEO complaints.  *See* Appellant Br. at 47, 80.  Not only is this a new argument that should not be considered for the first time on appeal, but it is also completely unsupported.  *See Keepseagle v. Perdue*, 856 F.3d 1039, 1053-54 (D.C. Cir. 2017) (explaining that appellate courts do not address issues not previously addressed by a district court in the first instance).  The record shows that Inspector Hodges, not Saldana, was lead investigator and that Inspector Hodges, not Saldana, authored the report.  *See* ROI

(R.60-4) at 150, 167, JA247, 264.  Although Saldana assisted Inspector Hodges in conducting the investigation, Tarquinii points to no evidence in the record that Saldana was named in EEO complaints that gave rise to him having any conflict of interest to work on an investigation into Tarquinii's misconduct. *See* Appellant Br. at 27-29, 46.

Nor, more importantly, does Tarquinii make any argument that Saldana acted to influence the investigation and its findings *because* of his purported conflict of interest, let alone any discriminatory or retaliatory motive. *See Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("It is settled that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000)).  At best, Tarquinii relies on her own testimony that in July 2014, Tarquinii raised concerns about segregation of Japanese and American employees by Saldana at the Marine Corp's Okinawa base.  *See* Appellant Br. at 27; Def.'s Resp. (R.71-1) ¶79, JA11862.  But even if this allegation were true, it is simply too attenuated in time or substance to establish any discriminatory motive on Saldana's part toward Tarquinii.  *See id.*; *see, e.g. Waterhouse v. District of Columbia*, 298 F.3d 989, 996–97 (D.C. Cir.

2002) (isolated race-based remark unrelated to the relevant employment decision could not, without more, permit a jury to infer discrimination).

Thus, the undisputed record shows that the Agency had a nondiscriminatory nonretaliatory justification for terminating Tarquinii.

Next, in summary judgment briefing, the Agency also presented a legitimate non-discriminatory and non-retaliatory reason to support the Agency's decisions to uphold Tarquinii's termination on appeal. *See* Mem. Op. (R.74) at 33-34, JA2019-20. Both appeal authorities based their respective decisions on their view that the Inspector General Report had found, upon "substantial evidence," that Tarquinii engaged in misconduct—a nondiscriminatory and nonretaliatory reason to deny Tarquinii's termination appeals. *See* Mar. 21, 2016, 1st Appeal Decision (R.60-11) at 2, JA326; Final Appeal Decision (60-12) at 3, JA330. On summary judgment, the District Court also properly examined the record to determine whether Tarquinii raised any evidence or argument that appeal authorities Colonel Boucher and Director Lacy harbored any discriminatory or retaliatory animus against Tarquinii and found none. *See* Mem. Op. (R.74) at 34, JA2020.

Thus, the undisputed record shows that the Agency had a nondiscriminatory nonretaliatory justification for upholding Tarquinii's termination on appeal.

### C. A Reasonable Jury Could Not Find that the Agency's Justifications Were Pretext and that the Agency Intentionally Discriminated or Retaliated Against Tarquinii.

After establishing the Agency's lawful nondiscriminatory and nonretaliatory reason for terminating Tarquinii and denying her appeals thereafter, the District Court reviewed and generously construed all evidence on which Tarquinii relied, *see* Pl.'s Stmt. (R.65), JA566-591; Pl.'s Resp. (R.65-46), JA1753-1837, to determine whether a "reasonable jury [could] find that the [Agency's] asserted nondiscriminatory or non-retaliatory reason was not the actual reason and the [Agency] intentionally discriminated or retaliated against the employee." *Allen*, 795 F.3d at 39 (cleaned up); *see* Mem. Op. (R.74) 21-33, 34-37, JA2007-19, 2020-23  Specifically, the Court reviewed Tarquinii's purported evidence of inaccuracies in the underlying investigation, purported procedural irregularities during her termination and appeal process, stray remarks made by her supervisors ahead of her termination, and purported comparator evidence. *See id.* Even viewed in the light most

favorable to Tarquinii, the District Court correctly concluded that Tarquinii did not marshal sufficient evidence, whether viewed separately or "in the aggregate," to permit a jury to find that the Agency's decisions to terminate Tarquinii and to affirm that termination because of Tarquinii's misconduct was for discriminatory and retaliatory reasons. *See* Mem. Op. (R.74) at 32-33, 34-37, JA2018-19, 2020-2023.

On appeal amicus complains about the District Court's use of the phrase "real reason" in its description of a plaintiff's burden of proof on summary judgment in discrimination and retaliation cases. Amicus Br. at 41-46. But this argument lacks merit because, as amicus admits, this Court has described a plaintiff's burden to muster, on step three of the *McDonnell-Douglass* framework, sufficient evidence on which a reasonable jury could find that "an employer's stated reasons [for the adverse action] were pretextual, and the *real reasons* were prohibited discrimination or retaliation." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015) (emphasis added); Amicus Br. at 44. Thus, by referring to Tarquinii's obligation to put forward, at step three, sufficient evidence on which a reasonable jury could find that the Agency's acted with discriminatory or retaliatory intent, as the "real reason" for an Agency's

action, the District Court did not apply the wrong standard of review in error. *See* Mem. Op. (R.74) at 21, JA2007.

Indeed, whether a court assesses discrimination under a but-for theory of harm or a multi-factor theory of harm, as discussed in more detail below, there must still be evidence in the record—whether pretext or something else—to show that the Agency acted with some retaliatory or discriminatory intent. *See infra.* Thus, the District Court properly described the plaintiff's burden of proof as: "the plaintiff can survive summary judgment only by showing 'that a reasonable jury could conclude that [she] was terminated for a discriminatory reason.'" Mem. Op. (R.74) at 16, JA2002 (citing *Jackson v. Gonzales*, 496 F.3d 703, 707 (D.C. Cir. 2007).

Finding no basis however, "on which a reasonable jury could find that the Agency's conduct was motivated by a discriminatory or retaliatory motive," the District Court properly granted "the Agency summary judgment with respect to Tarquinii's discrimination and retaliation claims[.]" Mem. Op. (R.74) at 33, 37, JA2019, 2023. On appeal, while Tarquinii repeats the same categories of evidence to support a showing of pretext and intentional discrimination or

retaliation, she raises many new arguments and interpretations of the record that, like at the District Court, are unsupported and lack merit. Thus, for the reasons addressed in the District Court's decision and as follows, the Court should affirm the finding that no reasonable jury could find that the Agency discriminated and retaliated against Tarquinii when it terminated her and upheld that termination on appeal.

### 1. Other Performance Reviews

For the first time on appeal, Tarquinii points to other performance indicators to establish that her termination was pretextual. Although Tarquinii has waived these arguments, they are also without merit.

First, Tarquinii argues that her 2014 performance review in which she received an "Outstanding" rating and her second-line supervisor's subsequent recommendation of Tarquinii to other employers is evidence that her termination was pretextual. *See* Appellant Br. at 14, 16, 20, 35, 39, 45, 54, 59, 62, 75. But while it is true that "[e]vidence indicating that an employer misjudged an employee's performance or qualifications is . . . relevant to the question whether its stated reason is a pretext masking prohibited discrimination," *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citing *Parker v. HUD,* 891 F.2d 316, 322

(D.C. Cir. 1989)), for other work performance to indicate pretext, the employer's error based on that other work performance must be "too obvious to be unintentional." *Id.*

Here, there is no indication that the juxtaposition between Tarquinii's 2014 work performance and her termination for misconduct the following year suggests that the latter was pretext. Rather, it is entirely reasonable given the record that Tarquinii's supervisors were able to give Tarquinii both positive performance evaluations the year before her termination, *see* 2014 Performance Appraisal (65-1), JA595, and still terminate Tarquinii when they later learned that an independent Inspector General Investigation substantiated whistleblower complaints against Tarquinii for engaging in nepotism. *See Brady*, 520 F.3d at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence, however, there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts.").

This is not a case where the discrepancy between Tarquinii's prior work performance and the justifications for her eventual termination so obvious as to be unintentional. Indeed, Tarquinii's work with the Agency

was far from perfect. Before being terminated for abusing her position of power to hire her husband and brother, Tarquinii was informally counseled for improperly using information she gained from her position of power to benefit her personally. *See* Def.'s Stmt. (R.60-2) ¶ 21, JA68; July 11, 2014, Email (R.60-15), JA352. Tarquinii was then put on a work performance plan because she used her position of power to recommend disciplinary action against someone for misconduct she could not justify. *See* Sept. 28, 2015, Ltr. of Caution (R.63-2) at 138-144, JA2209-2215. Finally, even after receiving notice of her proposed termination for violating rules against nepotism, Tarquinii once again used information gained from her position of power to benefit her settlement negotiations. *See* Nov. 2015 Emails between N. Tarquinii and R. Johnston, (R.63-5) at 6-8, JA2268-70.

More importantly, however, "the issue" as to Tarquinii's prior performance evaluations (and any category of evidence trying to establish pretext) "is not whether [Tarquinii's]" was or was not a subpar employee, "but whether [Tarquinii's] supervisor[s] 'honestly and reasonably believed'" that she had committed the misconduct substantiated by the Inspector General Investigation to warrant her termination. *See Vatel,*

627 F.3d at 1247-48. The District Court addressed this issue in its memorandum opinion and concluded that the record Tarquinii presented could not show that her supervisors and appellate authorities disbelieved the investigation's findings into Tarquinii's misconduct. Specifically, the District Court stated:

> In *Brady*, the D.C. Circuit specifically held that an employer's proffered reason for demoting an employee—that the employee engaged in sexually explicit conduct—was not a pretext for race discrimination, regardless of whether the incident had not actually occurred, because the employer honestly and reasonably believed that incident had occurred, given three other employees' accounts of it, followed by thorough and independent investigation that confirmed its probability. *Brady*, 520 F.3d at 496. Like in *Brady*, the Agency employer here has presented evidence that it believed Tarquinii engaged in misconduct and that it based its decision on that misconduct. But the Agency's proffered reason here is even stronger than in *Brady* because, unlike in *Brady* where the plaintiff had alleged the investigation was tainted by racism; here, Tarquinii appears to concede that the investigation was not conducted for discriminatory reasons.

Mem. Op. (R.74) at 23, JA2009.

Tarquinii next argues, again for the first time, that Iwaniec's positive reference for her, after her termination, to the Attorney General's Office undermines any indication that he honestly believed she had committed nepotism and therefore shows pretext. *See e.g.* Appellant Br. at 28, 36, 54, 63, 69, 71, 103, 105-107. But the declaration on which

Tarquinii relies proves the opposite.  When asked why Iwaniec gave Tarquinii this positive reference, he explained that contrary to denouncing her misconduct, he just wanted to help her "move on with her life" despite that misconduct.  *See* Iwaniec Decl. (R.65-5) at 8, JA793.

Thus, even on appeal, Tarquinii fails to point to any evidence of pretext on account of other performance indicators.

### 2. Shifting Justifications

Tarquinii next argues on appeal that the Agency presented "shifting justifications" for her termination and claims that "to this day" Tarquinii still "does not know the exact basis for her removal."  *See* Appellant Br. at 34-36, 53-54.  While "shifting and inconsistent justifications are probative of pretext," *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (cleaned up), there is no evidence of shifting or inconsistent justifications in this case, *see* Mem. Op. (R.74) at 18-21, 33-34, JA2004-2007, 2019-2020.  Although the District Court addressed Tarquinii's "shifting justification" arguments raised on summary judgment, *see id.* at 22, JA2008, Tarquinii does not revisit all those

arguments on appeal, and raises three slightly new arguments, which are, again, waived, but nonetheless, without merit.[2]

First, Tarquinii now tries to argue that Johnston's proposal to terminate her and Iwaniec's notice of termination recites shifting justifications for her termination because the former described Tarquinii's termination for misconduct and the latter accused Tarquinii only of "undefined employment actions." *See* Appellant Br. at 53, 71. A quick review of the record proves this argument is frivolous. Johnston's proposal to terminate states that Tarquinii "used [her] official position as the Chief of Human Resources to direct actions which facilitated the hire of [Tarquinii's] spouse and younger brother into federal jobs, in direct

---

[2] For example, at summary judgment, the District Court properly reviewed and rejected Tarquinii's argument that Iwaniec gave inconsistent reasons for her termination, when Iwaniec's notification of termination stated that Tarquinii "engaged in a pattern of misconduct that violated the rules of nepotism and actual or apparent conflicts of interest," and when Iwaniec later testified that he terminated Tarquinii because she "interfere[d] in the process of hiring her husband and brother." *See* Mem. Op. (R.74) at 22, JA2008. As the District Court concluded, Iwaniec's descriptions did not undermine the fact that Tarquinii's termination was because she had engaged in misconduct, and Tarquinii's claim that Iwaniec later changed his justification for Tarquinii's termination as due to "poor performance," misstated the record. *Id.* On appeal, Tarquinii does not address why the District Court's conclusion as to this argument was in error.

violation of [Agency Personnel Policies and Federal Regulations]." Proposal Letter (R.60-4) at 30, JA127. Iwaniec's notification of termination then states that Tarquinii "violated nepotism rules and federal ethics regulations" when she took actions "in connection with the employment of her husband and brother" by the Agency. Termination Letter (R.60-4) at 39-41, JA136-137. Thus, the justification supporting these two actions is the same.

Second, Tarquinii claims on appeal that many officials, including responsible management officials Johnston and Boucher later "admitted" that Tarquinii's removal was not about hiring. *See* Appellant Br. at 54, 71. On summary judgment, the Court addressed this argument as to Colonel Boucher and properly rejected it as unsupported. *See* Mem. Op. (R.74) at 36, JA2022; Def.'s Resp. Stmt. (R.71-1) ¶ 187, JA1888. The District Court pointed out that, contrary to Tarquinii's representations, Colonel Boucher's appeal determination and testimony "align with the proposal of termination." *Compare* Proposal Letter (R.60-4) at 30, JA127, *with* Mar. 21, 2016, 1st Appeal Decision (R.60-11) 2-3, JA326-327; Boucher Dep. (R.60-28) at 88:16-20, JA430. On appeal, Tarquinii does not state that the District Court reached this conclusion in error, nor does

she cite the specific testimony in the record to support her contention that other management also testified to shifting justifications for her termination. *See* Appellant Br. at 34-36, 53-54.

Regarding Tarquinii's claims as to Johnston's "shifting justifications," on summary judgment Tarquinii asserted that "Robert Johnston testified. . . that there was nothing that [Tarquinii] did improperly regarding the hire of her brother." Def.'s Resp. Stmt. (R.71-1) ¶ 144, JA1877. But the testimony on which Tarquinii relies for this assertion does not support that statement. *See id.*; Johnston Dep. (R.65-7) at 101, JA810 (stating "he wasn't qualified for one position, so she shifted the application or was able to shift other applications over to another similar position, as I recall. But . . . it seemed apparent on that investigation that she was involved in the hiring, of having him hired down there. And that's what I based my decision on.").

Third, although it is not clear from the briefing, Tarquinii appears to challenge the Inspector General Investigation's finding as unsupported because Tarquinii claims that she applied all rules and procedures to hiring her husband and brother correctly. As a result, Tarquinii claims that it was not until after the Inspector General Report

came out that management determined that Tarquinii had engaged in misconduct. She therefore accuses the Agency of shifting its position. *See* Appellant Br. at 34.

Tarquinii's arguments miss the mark for several reasons. First, a plain review of the record demonstrates that the findings of the Inspector General Investigation are clear and spell out the rules and procedures that Tarquinii violated when remaining engaged in the hiring process for her husband and brother. *See* ROI (R.60-4) at 154, 159-60, 161, 162-63, 164, 167, JA251, 256-257, 258, 259-260, 264. Second, as the District Court properly concluded, whether Tarquinii disagrees with the report's findings is irrelevant so long as Tarquinii's supervisors relied on the report in good faith, and as discussed above, they did. *See* Mem. & Op. at (R.74), 22-23, JA2008-2009. And third, there is no support for Tarquinii's circular reasoning that an Agency's decision to rely on a report is itself an indication of bad faith just because the Agency relied on the report after it came out.

### 3. Procedural Anomalies

Tarquinii has also alleged procedural irregularities to prove pretext both at the summary judgment stage and now on appeal. *See* Mem. Op.

(R.74) at 21, 35-36, JA2007, 2021-2022; *e.g.* Appellant Br. at 79-82. On appeal, Tarquinii reasserts several procedural irregularities that she raised on at summary judgment, but does not explain why the District Court erred when it rejected those irregularities as evidence of pretext. *See id.* Likewise, the procedural irregularities that Tarquinii attempts to raise on appeal fail to evince that they were undertaken at all for discriminatory or retaliatory motive, let alone that they somehow prove the underlying decisions regarding Tarquinii's termination were also pretext. Thus, the Court should find that the record fails to support any showing of pretext based on Tarquinii's perceived procedural irregularities.

While an employer's unexplained deviations from established procedure" may provide evidence that its proffered nondiscriminatory reason for an adverse employment action is pretextual[,] showing pretext requires more than simply criticizing the employer's decisionmaking process [as courts] may not second-guess an employer's decision absent demonstrably discriminatory motive." *Breiterman v. United States Capitol Police*, 15 F.4th 1166, 1175 (D.C. Cir. 2021) (cleaned up). "Minor

procedural irregularities without discriminatory intent are not enough to demonstrate pretext." *Id.*

On summary judgment, the District Court properly rejected Tarquinii's allegations of procedural irregularities as unsupported by the record. *See* Mem. Op. (R.74) at 21, JA2007. Tarquinii argued she was not given a copy of the Inspector General Report or afforded sufficient time to review the proposal and report and that the proposal did not sufficiently explain why she should be terminated. *See* Pl.'s Stmt. (R.65) ¶¶ 139-144, JA582-583. But as the District Court correctly found, the undisputed records showed that Tarquinii was given a copy of the Inspector General Report and she read it before she submitted her appeal of the proposal to terminate, which Iwaniec considered before he issued Tarquinii a notice of termination. *See* Mem. Op. (R.74) at 21, JA2007; Tarq. Decl. (R.65-2) ¶ 370, JA641; Tarquinii's Ex. 22, Facebook messages between J.N. Tarquinii and D. Ray (R.65-25), JA1360-1361 (stating "I've read the report."); Appeal Ltr. (R.60-4) at 32-38, JA129-135; Termination Letter (R.60-4) at 39, JA136. The District Court further concluded that Tarquinii failed to point to any evidence that the procedure involved in the proposal of termination deviated from the Agency's standard

termination procedures.  *See* Mem. Op. (R.74) at 21, JA2007 (citing *Walker*, 798 F.3d at 1092).  On appeal, Tarquinii raises no issue with the District Court's reasoning, which should be affirmed.

On summary judgment, District Court also rejected Tarquinii's allegations of procedural irregularities during her first-level appeal of her termination.  *See* Mem. Op. (R.74) at 35-36, JA2021-2022.  Specifically, Tarquinii had argued that she was denied the opportunity to cross-examine witness prior to an appeal hearing, but the District Court assessed the record and found that the "Agency's policy manual did not, in fact, afford Tarquinii a right to cross-examine witnesses prior to an appeal hearing."  Mem. Op. (R.74) at 35, JA2021 (citing ROI (R.60-4) at 118, JA215).  Likewise, the District Court rejected Tarquinii's contention that she was denied "the chance to review" and rebut "certain evidence" that Colonel Boucher considered prior to his first-level appeal decision, which the record cannot support.  *Id.*  Instead, as the District Court properly found, the "record reflects that the Agency provided Tarquinii with all the evidence it would have presented at the hearing," but when Tarquinii withdrew her request for a hearing on the eve before it was to take place, Mar. 9, 2016 Email from Andrea Downing to Major

Kyle A. Ugone, (R.60-26), JA423; Mar. 21, 2016, 1st Appeal Decision (R.60-11) at 2-3, JA326-327, the Agency submitted a summary of that evidence to Colonel Boucher, without adding any new evidence. *See* ROI (60-4) at 82-98, JA179-195 (explaining that the Agency "provided Mrs. Tarquinii with all of its documentary evidence to be used at the hearing."). Again, Tarquinii does not argue, now, that the District Court erred in this conclusion. *See* Appellant Br. at 80-81. Thus, the Court should find the record fails to support any showing of pretext based on Tarquinii's perceived procedural irregularities raised on summary judgment.

On appeal, Tarquinii adds several new instances where she claims the Agency's procedural errors demonstrate pretext, each of which Tarquinii failed to raise sooner and are now forfeited but also lack merit. First, Tarquinii argues that she was improperly denied access to her work email, phone, and the base after being issued her notice of termination. *See* Appellant Br. at 79, 80-81. Tarquinii also argues that she lost certain employment benefits after her termination. *See id.* at 80. But Tarquinii does not cite any policy that was violated by the actions taken to remove her access to email, phone, the base, and certain

employment benefits after termination. *See* Nov. 2015 Emails between N. Tarquinii and R. Johnston, (R.63-5) at 2-5, JA2264-67 (explaining why Tarquinii's email access was terminated). Nor does the record suggest that any policy was violated on account of these actions. To the contrary, for example, Tarquinii was offered a resignation package that would have allowed her to remain on the base longer, but Tarquinii rejected it. *See* Appeal Ltr. (R.60-4) at 32-38, JA129-135; Termination Letter (R.60-4) at 39, JA136 (noting date for Appeal Ltr.). More importantly, these alleged procedural irregularities do not suggest the Agency's reasons for terminating Tarquinii were pretext. *See Breiterman*, 15 F.4th at 1175.

Next, Tarquinii argues for the first time that she was denied an impartial investigation when officials "named in Plaintiff's complaints, . . . retained full control over the investigation, disciplinary, and appellate process." Appellant Br. at 80. Tarquinii cites no support for the argument that she was denied an impartial investigation. *See id.* Nor does Tarquinii allege that responsible management officials acted on any discriminatory or retaliatory motive because of Tarquinii's "complaints" against them, were such complaints to exist. *See id.*

Finally, Tarquinii alleges that both appeal authorities—Colonel Boucher or Whitman-Lacy—issued appeal decisions that were procedurally deficient because they did not identify the evidence relied on for their decisions, in violation of Personnel Policies. *See* Appellant Br. at 81. But the record clearly rebuts this contention. *See* Mar. 21, 2016, 1st Appeal Decision (R.60-11) 2-3, JA326-327; *See* Final Appeal Decision, (R. 60-12) at 3-4, JA330-331. Even to the extent there is any minor irregularities in the two appeal decisions, Tarquinii has not argued or pointed to any evidence to show that this discrepancy was for discriminatory or retaliatory purposes to demonstrate pretext.

### 4. Comparators

Next Tarquinii argues on appeal that ten comparators, "predominantly white, male, and non-disabled," were treated better than Tarquinii when facing disciplinary action as a result of misconduct. *See* Appellant Br. at 48. But on summary judgment the District Court carefully reviewed these same ten comparators, their characteristics, their purported misconduct, and their purported discipline, and determined that Tarquinii could not establish that any of these individuals were "'nearly identical' in all relevant respects in their

'employment situation[s]' to be deemed "similarly situated" to Tarquinii. *See* Mem. Op. (R.74) at 28 JA2014 (citing *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015)); *see also* Appellant Br. at 91-92; Pl.'s Stmt. (R.65) ¶¶ 192-202, JA624-625.

A plaintiff may use comparator evidence to show that her employer treated other employees of a different race, color, religion, or sex (or who did not engage in protected activity) more favorably than the plaintiff in the same factual circumstances. *See Brady*, 520 F.3d at 495. "To prove that [s]he is similarly situated to another employee, a plaintiff must demonstrate that [s]he and the allegedly similarly situated . . . employee were charged with offenses of comparable seriousness." *Burley*, 801 F.3d at 301 (cleaned up). Thus, "[f]actors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Id.* At the summary judgment stage, the plaintiff must demonstrate that "all the relevant aspects" of her employment situation are "nearly identical" to those of the proffered comparators. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025)

As the District Court properly concluded, Tarquinii has offered no evidence on which a reasonable jury could establish that the ten comparators she identified were sufficiently similarly situated. To start, the record does not show that Tarquinii and the ten other comparators had the same supervisors and were of the same seniority and shared similar job responsibilities to Tarquinii. *See* Mem. Op. (R.74) at 30-31, JA2016-17; *see also Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). But even were it assumed that the comparators shared the same supervisors with Tarquinii and even similar job responsibilities, the District Court properly concluded that the record still does not show that any of the ten comparators engaged in nepotism like Tarquinii was found to have engaged in. *See* Mem. & Op. (R.74) at 28-29, JA2014-15; Pl.'s Stmt. (R. 65) ¶¶192-202, JA624-625. Nor, moreover, is there any evidence in the record that any other comparators faced discipline for misconduct that is "of comparable seriousness" to nepotism. *See id.* Lastly, because Tarquinii rejected a resignation package in lieu of termination, the record must, but fails to show whether the ten individuals accepted or rejected a resignation package. *See id.* Therefore, the District Court properly concluded that

as a matter of law "Tarquinii is both not similarly situated with her proposed comparators and it is not clear that she was treated more harshly than several of those comparators in any event."  Mem. & Op. (R.74) at 31, JA2017.

On appeal, Tarquinii does not identify any basis on which the District Court erred when reaching this conclusion; thus, it should be affirmed.

### 5.    Evidence of Retaliation

Having failed to show that the Agency's non-discriminatory and non-retaliatory reason for Tarquinii's termination was pretext, Tarquinii next alleges that the District Court ignored prima facie evidence of retaliation when she was terminated after seeking to extend her reasonable accommodations.  *See* Appellant Br. at 83.  But Tarquinii's Complaint in this case brought retaliation claims based on prior protected EEO activity only, not because of reasonable accommodation requests, *see* Compl. (R.1) at 1, 3-10, JA11-20, and Tarquinii's submissions on summary judgment, likewise, failed to raise the argument that she was terminated because of her prior request for reasonable accommodations.  *See* Pl.'s Resp. (R.65), JA563.  Therefore,

Tarquinii has forfeited this claim. But even were the Court to consider this argument on appeal, the record shows that Tarquinii was terminated before she submitted her formal request to extend reasonable accommodations and no reasonable jury could find that but for this reasonable accommodation request, Tarquinii would not have been terminated. *See* Def.'s Reply Stmt. (R.71-2) ¶ 41, JA1914.

From the very beginning of this case, Tarquinii has always maintained retaliation claims based only on prior protected activity. *See* Compl. (R.1) at 1, JA11. Although Tarquinii also raised a denial of reasonable accommodations claim, which the District Court properly dismissed for failure to exhaust, *see* Mem. Op. (R.74) at 11-13, JA1997-99, Tarquinii has never alleged that she was terminated because of her reasonable accommodation request. *See* Pl.'s Resp. (R.65), JA563. And, while Tarquinii's pro se status requires her filings to be liberally construed, Tarquinii's memorandum of law in response to summary judgment, likewise, never raised the argument that she was retaliated against because of reasonable accommodation requests. *See* Pl.'s Resp. (R.65), JA563. Nor can Tarquinii rely solely on her statement of facts. That statement recites simply the timeline for her reasonable

accommodation request to preserve an argument that this same reasonable accommodation supports her retaliation claim "in the most skeletal way." *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)); *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("An argument left so naked "is tantamount to failing to raise it.").

But even were the Court to consider Tarquinii's new argument that the Agency terminated her based on retaliation for her extended reasonable accommodation request, the records show that Tarquinii was terminated before she even submitted that reasonable accommodation request. On July 27, 2015, Iwaniec approved Tarquinii's initial request for reasonable accommodations to telework one to two days per week and take breaks every three hours during the workday. *See* Def.'s Reply. Stmt. (R.71-2) ¶ 37, JA1913. After Tarquinii submitted her first reasonable accommodation request, it is undisputed that the policy for seeking reasonable accommodations changed. *See* Def.'s Reply. Stmt.

(R.71-2) ¶ 40, JA1913-1914; Def.'s Resp. Stmt. (R.71-1) ¶ 65, JA1858. Thus, while Tarquinii submitted a request to extend this reasonable accommodation on October 20, 2015, she was told to resubmit it the request. *See* Def.'s Reply. Stmt. (R.71-2) ¶¶ 39-40, JA1913-1914; Def.'s Resp. Stmt. (R.71-1) ¶¶ 65-66, JA1858-59 (Tarquinii's factual dispute is unsupported). Before Tarquinii could re-submit this reasonable accommodation request properly, however, she was terminated. *See* Def.'s Reply Stmt. (R.71-2) ¶ 41, JA1914. Therefore, it cannot be the case that Tarquinii was terminated out of retaliation for an accommodation request that she had yet to properly submit.

Alternatively, even were the Court to construe Tarquinii's "denied" October 20, 2015, submission to extend her reasonable accommodations request as protected activity, the temporal proximity between Tarquinii's reasonable accommodation submission and her notice of termination on November 10, 2015, alone, is still not sufficient, by itself, to support a record in this case on which a reasonable jury to conclude that the Agency terminated Tarquinii for her reasonable accommodation request and not because of its honest belief that she committed the gross misconduct of nepotism. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006) ("A

plaintiff *may* satisfy this third element of a prima facie case by showing the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity." (cleaned up) (emphasis added)).   After all, a claim for retaliation under the Rehabilitation Act "require[s] proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Tex. Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 352 (2013).  And here, unlike her Title VII claims for discrimination, amicus has not sought the application of a multi-factor theory for Tarquinii's retaliation claims.  *See* Amicus Br. 17-18, 37, 40

Recall that because the Agency has already established a legitimate non-retaliatory reason for Tarquinii's termination, "[a]t this stage, the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation."  *Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009).  Whether a plaintiff has stated a prima facie case, at this point, is not conclusive.  *Id.* (citing *Brady*, 520 F.3d at 494). "That the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity is adequate to permit an inference of retaliatory motive, *at least at the*

*prima facie stage*," but, as this Court has held, in some "cases the nature of the protected activity and the full context [of the case] may render evidence of temporal proximity insufficient to permit an ultimate inference of retaliation." *Id.* at 679, 680 (cleaned up) (emphasis added) ("Of course, that such evidence would show intent at the prima facie stage does not resolve the question of retaliation *vel non*.").

Here, the temporal proximity between Tarquinii's request to extend her reasonable accommodation claims and her termination is simply not sufficient, given the record in this case, to permit a reasonable jury to find that Tarquinii was terminated out of retaliation for Tarquinii's reasonable accommodation activity and not because of the Agency's honest belief that Tarquinii had committed nepotism. Indeed, the undisputed record does not show any indication of retaliatory animus due to Tarquinii's request for reasonable accommodations. Tarquinii had already once been approved her reasonable accommodation request in July 2015. Def.'s Resp. Stmt. (R.71-1) ¶¶57-59, JA1857. Then in October 2015, when Tarquinii needed to extend that prior reasonable accommodation request, Tarquinii's first-line supervisor, Johnston immediately asked Tarquinii to resubmit her request according to the

Agency's new policies for seeking reasonable accommodations. Def.'s Reply Stmt. (R.71-2) ¶¶39-40, JA1913-14; Def.'s Resp. Stmt. (R.71-1) ¶¶63-65, JA1858-59. But before Tarquinii re-submitted her request, the Agency terminated her for a separate reason and it could not act on Tarquinii's reasonable accommodation request before that termination took place. *See* Def.'s Reply Stmt. (R.71-2) ¶ 41, JA1914.

### 6. Evidence of Discrimination.

On appeal, both Tarquinii and amicus argue that comments and conduct by Iwaniec and Johnston are evidence of discriminatory animus. *See* Appellant Br. at 66; Amicus Br. at 28-29; 49-50. But the District Court properly reviewed all of the comments and conduct that Tarquinii raised on summary judgment and correctly found that these comments, even if they conveyed discriminatory animus, were not sufficient to show that Tarquinii's termination was motivated by the discriminatory animus because Tarquinii could point to "no nexus" between any racial and religious animus and the employment decision, especially in light of Tarquinii's admission that her termination was based on the investigation report only. *See* Mem. Op. (R.74) at 25-26, JA2011-12.

Specifically, on summary judgement, Tarquinii cited comments that Iwaniec made in December 2014 and March 2015—eight to eleven months before Tarquinii's termination—about Tarquinii's religious practice. *See* Pl.'s Resp. (R.65) ¶¶10-26, 568-570. The records on which Tarquinii relied also alleged that on multiple unspecified occasions, Iwaniec called Tarquinii names like "sweetheart" and told her "I love you," but did not specify when these comments were made. *See id.* Tarquinii also alleged, on summary judgment that Iwaniec made frequent comments about her appearance, made suggestive gestures, and sexual innuendos, commented about Tarquinii's weight, face, and eyes, and once stated that he dated "many black girls" in the past, but cited only a handful of instances when Iwaniec supposedly made these comments in February, 2015, April 2015, June 2015, and August 2015. *See id.* At most, the record on which Tarquinii relied cited one incident around October 9, 2015, when Mr. Johnston told Tarquinii not to be so emotional and to speak softly. *See id.* Based on this record, the District Court properly concluded that while many of these comments took place too long before Tarquinii was terminated to be probative of discriminatory animus, for those closer in time to Tarquinii's

termination, even if the comments could evince bias, Tarquinii still failed to explain how the comments had any connection to the investigation report, which substantiated Tarquinii's misconduct and served as the basis on which Tarquinii's supervisors decided to terminate her. *See* Mem. Op. (R.74) at 26-27, JA2012-13. *See Iyoha v. Architect of Capitol*, 927 F.3d 561, 569 (D.C. Cir. 2019) (noting that a plaintiff claiming discrimination must "show more than 'general bias'"; she must also "produce evidence to show" that the employment action was "'motivated by that bias'" (quoting *Morris*, 825 F.3d at 670)).

Amicus argues that the District Court erred when it failed to (1) take into consideration additional instances where Iwaniec's comments and conduct evinced discriminatory animus, (2) treat Iwaniec and Johnston's comments as pervasive and severe and find that because these comments were made by the same supervisors who terminated Tarquinii they sufficed to create a nexus between the remarks and Tarquinii's termination. Amicus Br. at 46-54. Both arguments fail.

First, Amicus argues that the Court, erred when it failed to consider more comments in the record to support a showing of discriminatory animus, including when Iwaniec referred to another black female

employee in November 2014 as "bitch," and when Tarquinii claimed that these comments continued into November 2015. *See* Amicus Br. at 28, 50. But under the standard of review on summary judgment, the Court had no obligation to credit other evidence in the record that Tarquinii herself failed to raise or support with specific citations to the record. *See* Pl.'s Stmt. (R.65) ¶¶ 11, 16-17, 19-24, JA568-570 *See Grimes v. District of Columbia,* 794 F.3d 83, 94 (D.C. Cir. 2015).

But even considering the additional comments raised by amicus the sum of these comments, still fails to provide sufficient evidence, to support a showing that Tarquinii's termination was based on sex and race and not because an independent investigation confirmed she had committed nepotism. To dispute this, amicus relies on caselaw, which is distinguishable.

For example, Iwaniec and Johnston's comments are not like those in *Morris v. McCarthy,* 825 F.3d 658 (D.C. Cir. 2016), where multiple witnesses testified to the responsible management officials' making discriminatory remarks about "white boys" as "nasty" and "little," and warning that "the little white woman better stand in line." 825 F.3d at 669-70. While Iwaniec's alleged comments about Tarquinii's weight and

appearance, and even comments about dating preference, would be inappropriate, none suggest any discriminatory animus toward Tarquinii on account of her race or sex. The one discriminatory remark that Iwaniec did make in 2014 when he called another black woman a "bitch" was simply a stray remark.

*Morris* is also distinguishable from this case because unlike here, Morris could show that her supervisor's comments reflected a general race bias, *and* she "introduce[d] enough evidence for a reasonable jury to find that [the plaintiff's] suspension was motivated by that bias." 825 F.3d at 669-70. Specifically, Morris had presented sufficient evidence that weakened the agency's nondiscriminatory explanation for its actions. *See id.* By pointing to evidence that raised a material question of fact as to whether the agency honestly believed that Morris had committed the misconduct for which she was suspended, a reasonable jury could find that the agency nondiscriminatory explanations were pretext and that the agency intentionally discriminated against Morris instead. *See id.* at 670-71. Here, however, as discussed above, Tarquinii has not raised any evidence of pretext to challenge the Agency's honest belief that Tarquinii committed misconduct.

*Rachid v. Jack In The Box, Inc.*, 376 F.3d 305 (5th Cir. 2004), is also like *Morris* and is distinguishable. In *Rachid*, the court similarly found that the record contained sufficient evidence on which a reasonable jury could find that responsible management official harbored age discrimination and that the justification for the plaintiff's termination was pretextual. *See Rachid*, 376 F.3d at

Finally, *Bart v. Golub Corp.*, 96 F.4th 566, 576 (2d Cir. 2024), is also distinguishable from this case given the link between the nature of the biased comments and the justification for the adverse employment action. Specifically, in *Bart*, the court found that a reasonable jury could find evidence of a link between a supervisor's comments regarding gender stereotypes and the adverse action to make those comments probative of discrimination. *See id.* at 577-78. Namely, the plaintiff provided evidence that her supervisor repeatedly commented about women being ill-suited for the certain work assignments and then that same supervisor was substantially involved in the decision to terminate the plaintiff because she had failed to perform a certain work assignment. *See id.* Here, by comparison, there is no link between any comments from Iwaniec and Johnston that could suggest race or gender bias and the

independent finding by the Inspector General Investigation that Tarquinii had committed nepotism.

The fact, that Iwaniec and Johnson were also the responsible management officials who decided to terminate Tarquinii, moreover, does not by default create a nexus in this case between their comments and Tarquinii's termination. While both supervisors based their decisions to terminate Tarquinii on the results of an Inspector General's Report, concluding that Tarquinii had committed nepotism, neither supervisor was involved with initiating or competing that investigation to begin with.

### D. There Is No Evidence in the Record on Which a Reasonable Jury Could Find that the Agency Unlawfully Interfered with Other Employment Opportunities

As a final matter, the District Court properly found that the Agency is entitled to summary judgment on Tarquinii's discrimination and retaliation claims based on interference with other employment opportunities. *See* Mem. Op. (R.74) at 37-41, JA2023-2027. At summary judgment, the District Court properly found that the Agency had legitimate non-discriminatory reasons to support the references that they provided, none of which could really be construed as negative, and that

Tarquinii failed to present any evidence on which a reasonable jury could find that these reasons were pretext and that the Agency acted with discriminatory or retaliatory motive instead. *See id.* On appeal, Tarquinii presented no argument as to why the District Court's findings as to these claims was in error. *See* Appellant Br. at 55, 69. Thus, the Court should affirm the District Court's holding.

## II. <u>Amicus Curiae's Arguments Are Unavailing</u>

Amicus argues that summary judgment should be reversed because the District Court failed to consider whether a reasonable jury could find that race and sex played a motivating factor for Tarquinii's termination under the motivating factor theory of liability under Title VII. *See* Amicus Br. at 19. The Court should reject this argument for two reasons. First, because Tarquinii never raised a motivating factor theory of liability on summary judgment, or at any point previously in this case, she has forfeited it for purposes of defeating summary judgment. Second, even if the Court were to apply a motivating factor theory to assess whether a reasonable jury could at least find that discrimination based on Tarquinii's race and sex played a motivating factor for her

termination, summary judgment should still be affirmed for the reasons discussed above.

Under the motivating factor theory that amicus tries to advance, a plaintiff who is "unable to establish that a protected characteristic was the but-for cause of an adverse employment action," can still "prevail by showing that unlawful discrimination was 'a factor motivating the adverse action.'" *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (citing *Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008)). Importantly, however, if a plaintiff asserts this type of "mix-motive" case, and a defendant "demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor," then a plaintiff can recover only equitable relief and certain fees and costs. *Ponce*, 679 F.3d at 844. "By contrast, a plaintiff who establishes but-for causation may recover damages, as well as declaratory and injunctive relief." *Id.* at 845 (citing *Fogg v. Gonzales,* 492 F.3d 447, 451 (D.C. Cir. 2007)).

Because of the potential consequences a motivating factor theory of liability can have on the recovery of damages under a Title VII employment discrimination case, it is up to the plaintiff to determine

whether to raise a motivating factor theory of liability and when. Although "a plaintiff need not plead a precise theory of causation in the complaint," a plaintiff who wants the District Court "to consider a mixed-motive theory when ruling on a summary judgment motion," is "required to argue that race was a 'motivating factor.'" *Id.* (citing *Ginger*, 527 F.3d at 1345).

Here, because Tarquinii never raised a motivating factor theory of liability in this case and failed to do so on summary judgment, she waived this argument, and the Court should not consider it for the first time on appeal. *See Keepseagle*, 856 F.3d at 1053-54. Nor, moreover, "may amici expand an appeal's scope to sweep in issues that a party has waived." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 666 n.4 (D.C. Cir. 2017).

Although amicus so much as admits that Tarquinii never raised a motiving factor theory of liability on summary judgment, amicus argues, nonetheless, that the District Court erred by failing to analyze both theories in this case. Amicus Br. at 38-39. But amicus cites no caselaw from this Circuit to support the argument that a District Court should *sua sponte* decide to assess an employment discrimination case under

both a single and mix-motive liability case. *See id.* To the contrary, the D.C. Circuit has made clear that "at some point [the plaintiff] must place the employer and court on notice as to the theory or theories under which he intends to proceed." *Ponce*, 679 F.3d at 45. Likewise, even if it came down to the District Court at some point having to "decide whether a particular case involves mixed motives, *Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989), this does not mean that a plaintiff does not need to give the Court notice, first, whether it wants to proceed on one or both liabilities at the time the factfinder concludes that liability should be should be found under one or an alternative theory. This is especially the case here, where not only did Tarquinii fail to raise the theory of liability on summary judgment, but there is nothing on the pleadings to support such a theory. *See generally* Pl.'s Resp. (R.65), JA566-591. To the contrary, that Tarquinii seeks all "lost wages and benefits," signals that Tarquinii is seeking relief under a single-theory of liability. *See* Compl. (R.1) at 18, JA28.

Second, even if the Court were to want to assess whether liability exists in this case under a motivating factor theory, the Court need not remand the case for the District Court to reach this conclusion, but can

find on appeal that the answer here is, no. As discussed in detail above, not only did Tarquinii fail to present evidence on which a reasonable jury could find that the decision to terminate her employment and the decisions to affirm that termination were pretext, but she can point to no evidence in the record to show that these decisions were at least motivated by any retaliatory or discriminatory animus and not because an independent investigation confirmed that Tarquinii had committed the grave misconduct of nepotism. That Tarquinii may be able to allege, at best, that her supervisors' comments give rise to a showing of race and sex bias, moreover, is not enough to warrant reversal because there must be sufficient evidence on which a jury could reasonably find that the same race and sex bias was an actual motivating factor in order to establish liability. Thus, even if the Court finds that this case should have been assessed under a motivating factor theory of liability, the outcome is the same; summary judgment should be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

JOHNNY H. WALKER, III
Assistant United States Attorney

ANNA D. WALKER
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2544

*Attorneys for the United States of America*

Dated: February 2, 2026

## CERTIFICATE OF COMPLIANCE
(Fed. R. App. P. 32(a)(7)(B))

This brief is prepared using 14-point Century Schoolbook, a proportionally spaced font and—omitting those items described in Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1)—contains 12,338 words as counted by Microsoft Word 365.

/s/ ANNA D. WALKER
ANNA D. WALKER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I certify that on February 3, 2026, I caused the foregoing to be served by filing it with the Court's CM/ECF system and by U.S. mail and email addressed to Appellant at the address below:

Jawan N. Tarquinii
15004 Running Park Court
Bowie, MD 20715
noel_bma@yahoo.com

/s/ ANNA D. WALKER
ANNA D. WALKER
Assistant United States Attorney
